UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
JUN 1 5 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-432-GWU

MICHELE CALTON
O.B.O. ALICIA CALTON,     PLAINTIFF

VS.     **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY     DEFENDANT

## INTRODUCTION

Michele Calton appeals from the negative administrative decision on her daughter Alicia Calton's application for Child's Supplemental Security Income (SSI) benefits. The case is before the Court on cross-motions for summary judgment.

## LAW APPLICABLE TO CHILD'S SSI BENEFITS

As of 1996 strict standards for child's SSI claims were adopted. The Welfare Reform Act, P.L. No. 104-193, 110 Stat. 2105, provides that:

> An individual under the age of eighteen (18) shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than 12 months.

Thus, a child's SSI claim can be granted now only if there is a "marked and severe functional limitation(s)." The impairment must meet, medically equal, or functionally

equal in severity one of the Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 2. 20 C.F.R. Section 416.924.

The implementing regulations require the agency to determine if the child's impairment(s) meet any Listing of Impairments sections found at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. Section 416.924. If this step is not satisfied, the fact finder is required to consider limitation of specific functioning, broad areas of development or functioning, episodic impairments, and limitations related to medication effects to determine "functional equivalence" to the LOI. Section 416.926a. Functional equivalence is established if the child has one area of extreme functional limitations (i.e., very serious interference with functioning) or two areas of marked limitation (i.e., serious interference with functioning). Id.

## DISCUSSION

The administrative law judge (ALJ) found that Calton suffered from Charcot-Marie-Tooth Disease, Sheuermann's Kyphosis and obesity. (Tr. 19). Nevertheless, he believed that her conditions did not meet, equal or functionally equal any of the Listing of Impairment (LOI) sections. (Id.). In so finding, the ALJ specifically determined that Calton had a "less than marked" limitation in "moving about and manipulating objects" and a "marked" limitation in "health and physical well being" (Tr. 16-17). No other limitations were found. (Tr. 15-16).

The record clearly reveals that the child had no significant mental impairments. When filling out the initial benefits application, Calton's mother

mentioned that the child took care of her personal hygiene, could use public transportation, keep out of trouble, make new friends and cook a meal for herself. (Tr. 77, 78). By her mother's later admission, the child was also described as able to learn to play the flute, study the Bible and memorize verses (Tr. 96), read Seventeen magazine (Tr. 98), and attend the tenth grade in school (Tr. 96). Her seventh grade Language Arts teacher referred to only physical problems. (Tr. 101). A physical therapist commented that she demonstrated a good understanding of the instructions. (Tr. 106). An old Shriner's Hospital progress note from 1998 refers to the fact that the child was an "A" and "B" student in the fourth grade. (Tr. 124). Later, the plaintiff herself described her tenth grade grades as "usually" As and Bs (Tr. 227) and noted that she was now playing the xylophone and marimba in her school band (Tr. 229). Medical Reviewer Dennis Penn found no limitations relating to "acquiring and using information," "attending and completing tasks," or "interacting and relating to others. (Tr. 211).

Moreover, the plaintiff's physical function impairments related to her legs and back only (e.g., Tr. 91, 92) and, at that, appears to preclude only somewhat vigorous activity or walking (E.g., Tr. 101, 104). The plaintiff testified that her major problem was in being able to ambulate and move around, but that she was still able to vacuum as a household chore. (Tr. 230). Her Language Arts teacher mentioned only difficulty with walking. (Tr. 1010. As of 1998 she had been cleared for cheerleading activity which did not involve "vigorous gymnastics" such as high

Calton for Calton

trampoline bouncing and tumbling (Tr. 119), although the cheerleading did not ultimately work out well (Tr. 114). As of 1999 and 2000, her hand muscle strength was described as "normal" (Tr. 109), "excellent" (Tr. 114) or "very strong" (Tr. 119). No prescription medication was taken as of 2000 (Tr. 87). As of 2002, her physical therapist indicated she was doing "very well" (Tr. 105) and her neurologist recorded that she was not tripping and was doing "very well with her Charcot-Marie-Tooth Disease (Tr. 104).[1] Medical Reviewer Jo Anne Sexton indicated there was no limitation in caring for herself (Tr. 213) and that, overall, her condition did not meet, medically equal or functionally equal any Listing of Impairment section. (Tr. 209).

For these reasons, as well as those cited in the defendant's brief at pp. 12-13 regarding the evaluation of pain, the decision will be affirmed.

This the _15_ day of October, 2004.

G. WIX UNTHANK
SENIOR JUDGE

---

[1] The physician referred to "HMSN" (Tr. 104) which was "hereditary sensory motor neuropathy" a.k.a. Charot-Marie-Tooth Disease (Tr. 119).